Moncure P.
delivered the opinion of the court.
This is a writ of error and supersedeas to a judgment of the court of the corporation of the city of Norfolk, rendered on the 28th day of May 1872 in an action of trespass on the case, wherein Charles Ormsby, an infant, suing by James Ormsby, his next friend, was plaintiff, and the Norfolk and Petersburg railroad company were defendants. The injury complained of in the declaration was, that the defendants so negligently conducted their engine and cars as to strike them with great force and violence against the plaintiff, by means whereof his right arm was so fractured and injured that it became necessary to amputate the same, and it was thereupon amputated, and he was otherwise greatly wounded and injured, and by means of the premises the plaintiff was so maimed as to be disabled for the remainder of his life. Issue was joined on the plea of not guilty, which was tried by a jury; and a verdict was rendered in favor of the plaintiff, whose damages were assessed at $8,000. Whereupon the defendants moved the court to set aside the verdict and grant a new trial, upon the ground that the verdict was contrary to the law and the evidence. But the court overruled the motion, and the defendants excepted to the opinion of the court, and tendered a bill of exceptions, which was *472 made a part of the record. The facts proved on the trial of the cause were certified by the court; and was rendered in pursuance of the verdict.
On the trial of the cause the defendants excepted to various opinions and rulings of the court, besides the opinion and ruling of the court in overruling their motion for a new trial, and tendered their several bills of exceptions, which were also made a part of the record. To the judgment aforesaid, the defendants applied to a judge of this court for a writ of error and supersedeas, which were accordingly awarded. The errors complained of are assigned in the petition for said writ, and are founded on the said bills of exceptions. The case was argued before this court with great ability and learning; and we will now proceed to consider and dispose of the questions presented by the record in the order in which they arise.
First—We are of opinion that the court below did not err in overruling the motion of the defendants to set aside the verdict of the jury and grant a new trial, upon the ground that the said verdict was contrary to the law and evidence.
The defendants contend that the injury complained of in this case did not proceed from any fault or neglect on their part; and that if it proceeded from their neglect at all, there was such contributory negligence on the part of the plaintiff or his p'arents in regard to the cause of the injuxy as exonerates them (the defendants) from liability to him therefor. We will consider each of these grounds of defence; and,
First, whether the injury proceeded from any fault or neglect on the part of the defendants?
Could the injury have been avoided by the use of any reasonable means which might and ought to have been used by the defendants? We are constrained to *473 say that it could. In running cars propelled by steam along a railroad over the streets of a populous city, where there are a great many children, the •care and precaution are necessary, and ought to be used, to avoid danger to human life. The injury complained of in this case was caused by the running of the flat car at Howell’s over the plaintiff, who had fallen on the railroad track just beyond the car; and the running of that car over the plaintiff was caused by its being propelled by the engine and moving train before it had been coupled with that train; whereas it ought and might conveniently have been coupled with that train before it was set in motion. The facts are certified, that if the coupling had been done before the flat at Howell’s lumber yard was set in motion, the injury would not have occurred; for, in that case, the flat car would not have been propelled more than three feet, and so would not have touched the plaintiff, who was “lying about six feet west of and beyond the said flat car, with his arm upon the track, and the rest of his body on the north side thereof, looking as though he had stumbled and fallen, and was struggling to get up.” Whereas, “ when the train struck the stationary car, and failed to make a coupling, the said stationary car was driven back on the track about one-half of its length, its whole length being from twenty-seven to thirty feet.” In consequence of ■which the flat not only reached the plaintiff lying on the track, but passed over him, and earned him several times around the car wheel. Why was not this connection made? Because there was no coupling pin then there with which to make it. Why was not one there ? ' It is said that one had been left there with the flat in the morning, as had been the usual *474 practice in such cases, but that somebody had taken it away. Why was not such a probable danger guarded by fastening the pin to the flat, so that it could not *a^-en away? or, why was not the precaution used of bringing a pin with the moving train, to be sure of being ready to make the connection at once?' It is certified “that in Portsmouth the coupling pins left with the cars were so commonly thrown away by mischievous boys, or stolen by negroes, that the train master was put to great inconvenience, and adopted the plan of attaching them permanently to the cars.” Why was- not the same precaution used in Horfolk, where the obvious danger of loss of the pins must have been just as great as in Portsmouth? Again, why was not the obvious precaution used—of making examination before the stationary flat at Howell’s was set in motion, to see if there was anybody or anything under or near the car which could be injured its being set in motion ? This would have taken very little time, and given very little trouble. There were several hands on the moving train, either one which, without stopping the train, could have made examination. It may be said that it was not probable there was any person or thing under or near flat which could be hurt, as nothing was seen by those on the train or by the bystanders. Nothing, it seems, was carefully looked for by them. But was it improbable as to excuse such a want of caution, when human life and limb were at stake? A flat had been left standing in the strfeet of a populous city from between nine and ten o’clock in the morning until between four and five o’clock in the afternoon the day on which the injury complained of was done. Was it strange or extraordinary that the *475 plaintiff, a child only two years and ten months old, \ , ’ , / 1 should have been found on the track under or near the car then standing just in front of his door, and only forty feet therefrom? A flat left nearly all day in the street might naturally he expected to be a play place for the neighboring children.
We are therefore of opinion, that the injury complained of in this case proceeded from the negligence of the defendants, who are therefore liable therefor; unless they can be exonerated from such liability on the ground of contributory negligence. We therefore proceed now to consider:
Secondly. Whether there was such contributory negligence on the part either of the plaintiff or his parents, in regard to the cause of the injury, as exonerates the defendants from liability to him therefor.
In regard to any negligence on the part of the plaintiff himself, it has not been contended, and cannot be, that he was old enough to he guilty of any, or, at all events,“ that he was guilty of any in this case.
And in regard to any negligence of his parents, or either of them, if such negligence can be imputed to him, about which we will presently enquire, when we come to consider the case upon the instructions, we think it very clear that there was in fact no such negligence on their part. The facts,which are certified in the record are conclusive on this subject; and we will not repeat them, as they may be seen by reference to the certificate.
We therefore conclude, on this branch of the subject, that the court below did not err in overruling the motion of the defendants to set aside the verdict, upon the ground that it was contrary to the law and evidence.
*476 Second. We are of opinion, that the court did not err in refusing to give the instructions asked for by defendants, numbered two, three, four, five, six, seven> eight and nine; nor in giving instruction numbered one, with certain modifications.
The second instruction is objectionable on two grounds: First, the plaintiff was not “permitted by his parents,” as the instruction assumes, “to go on the railroad track of the defendants on Widewater street, without placing him under the charge of some one capable of taking care of him and protecting him from injury;” and, secondly, the said instruction imputes to the infant plaintiff the assumed negligence of his parents; for which, even if there had been any such negligence, as in fact there was not, the infant plaintiff would not have been responsible. On this question, as to the liability of infants for the neglect, imputed to them, of their parents, there appears to be much conflict in the cases, many, and perhaps most of which were cited in the arguments of the learned counsel. But without following them through their review of the cases, we deem it sufficient to say, that we concur in the principle of the case of Lynch v. Nurden, 1 Ad. & El., N. S., 29, 41 Eng. Com. Law R. 422, and others of that class; which decide that the neglect of parents and guardians is not imputable to infant children and wards in such eases; and that we do not concur in the principle of the case of Hartfield v. Roper, 21 Wend. R. 615, and others of that class, which decide the contrary.
The third instruction is objectionable, because it was calculated to mislead the jury, and was apparently contradictory. Though the plaintiff’ might not have been actually visible to the agents of the defendants* *477 he might have been seen by them, certainly, if they had looked for him, as they ought to have done. In other words, they ought to have made sure, as they might have done, that there was no person under or behind the stationary car when they set it in motion. And besides, they ought to have coupled the moving train with the stationary car before they set the latter in motion; in which case they would have guarded against all injury to persons visible or invisible.
The fourth instruction is objectionable, for reasons already given in regard to the first assignment of error.
The fifth instruction is objectionable, because it imputes negligence to the plaintiff, of which, from his tender years, he was not capable.
The sixth and seventh instructions are objectionable, for reasons already stated, because they hold the plaintiff responsible, by imputation, for the supposed negligence of his parents.
The eighth instruction embodies a general truth which seems to be unobjectionable in itself; but it is clearly embraced in the first instruction as modified by the court.
The first instruction, as modified by the court, is unobjectionable, and embodies all the law which seems to apply to the case, or to be necessary to enable the jury to decide it properly.
Third. We are of opinion that the court below did not err in overruling the objection of the defendants on the ground of the supposed variance mentioned in their “bill of exceptions number two;” being of opinion that there was no such variance.
Fourth. We are of opinion, that the said court did not err in overruling the objection of the defendants *478 to the evidence mentioned in their “bill of exceptions number three.”
the whole, we are of opinion, that there is no error the judgment of the court below, and that it ought to be affirmed.
Judgment arrirmed.